1
2
3
4
5
6
7
8                  **UNITED STATES DISTRICT COURT**

9                 **EASTERN DISTRICT OF CALIFORNIA**

10

11   JEFFREY SCOTT SMITH,                  )   Case No.: 1:21-cv-01160-SKO
                                           )
12                  Plaintiff,             )
                                           )   ORDER ON PLAINTIFF'S SOCIAL SECURITY
13        v.                               )   COMPLAINT
                                           )
14   KILOLO KIJAKAZI, Commissioner of      )
     Social Security,                      )
15                                         )
                    Defendant.             )
16   _____)

17   **I.      INTRODUCTION**

18           On August 2, 2021, Plaintiff Jeffrey Scott Smith ("Plaintiff") filed a complaint under 42 U.S.C.

19   § 405(g) seeking judicial review of a final decision of the Commissioner of Social Security (the

20   "Commissioner" or "Defendant") denying his application for Disability Insurance Benefits ("DIB")

21   under Title II of the Social Security Act (the "Act").  (Doc. 1.)   On February 18, 2022, Plaintiff filed a

22   motion for summary judgment and an amended opening brief.  (Docs. 14, 15.)  Defendant filed an

23   opposition on April 4, 2022, and Plaintiff filed a reply on April 19, 2022. (Docs. 17, 18.)  The matter

24   is currently before the Court on the parties' briefs, which were submitted, without oral argument, to

25   the Honorable Sheila K. Oberto, United States Magistrate Judge.[1]

26   /////

27

28
     _____
     [1] The parties consented to the jurisdiction of a U.S. Magistrate Judge. (Docs. 7, 10.)

                                          1

## II.     BACKGROUND

On May 13, 2019, Plaintiff filed an application for DIB under Title II of the Act, alleging he became disabled on December 1, 2018.  (Administrative Record ("AR") 358.)  He alleges he became disabled due to a combination of physical impairments, including coronary artery disease, heart stent, blocked artery, bilateral carpal tunnel syndrome, left arm nerve syndrome, bilateral torn meniscus, and diabetes. (AR 260.)  Plaintiff was born on December 19, 1970, and was 47 years old as of the alleged onset date. (AR 358.)  Plaintiff attended high school until the 10th grade and received his GED. (AR 44.)  He was self-employed in the construction industry from May 1992, until the date he became disabled.  (AR 252.)

### A.     Relevant Medical Evidence[2]

On December 4, 2018, Plaintiff presented to emergency care at Madera Community Hospital complaining of chest pain, 8/10 in intensity, midsternal and radiating to left jaw and left arm. (AR 750.)  His troponin level was elevated, but his EKG showed no change since 2012. (AR 750-55.)  On December 5, 2018, an echocardiogram was conducted which revealed concentric hypertrophy of the left ventricle with abnormal diastolic function of the left ventricle, with ejection fraction estimated at 65%. (AR 760.)  Plaintiff also had mild mitral regurgitation, aortic valvular calcification, and mild tricuspid regurgitation. (AR 760.)  He was discharged with non-ST elevation myocardial infarction, chronic hypertension, and chronic diastolic heart failure. (AR 761.)

On January 9, 2019, Dr. Ashraf performed a left heart catheterization, left ventricular cineangiogram, and selective left and right coronary cineangiography. (AR 632-33.) The left ventricular cineangiogram revealed left ventricular ejection fraction at 55%. (AR 633.) The selective left and right coronary angiogram revealed two-vessel coronary artery disease. (AR 633.) Dr. Ashraf recommended a percutaneous coronary intervention of the right coronary artery and the circumflex artery. (AR 633.)  On the same date, Dr. Lakhjit Sandhu performed a successful percutaneous

---

[2] Because the parties are familiar with the medical evidence, it is summarized here only to the extent relevant to the contested issues.

2

coronary intervention of the mid circumflex reducing 95% stenosis to 0% stenosis with 1 stent. (AR 638.)

On June 11, 2019, Plaintiff presented to Dr. Ashraf for complaints of chest discomfort. (AR 934.)  Dr. Ashraf diagnosed Plaintiff with angina pectoris, presence of coronary angioplasty implant and graft, essential hypertension, and mixed hyperlipidemia. (AR 935.) Dr. Ashraf prescribed Brilinta and advised Plaintiff to return in one month. (AR 935.)

On December 17, 2019, Plaintiff followed up with Dr. Ashraf for chest discomfort. (AR 927.) Dr. Ashraf diagnosed Plaintiff with angina pectoris, presence of coronary angioplasty implant and graft, and essential hypertension. (AR 928.) Dr. Ashraf ordered diagnostic imaging studies and advised Plaintiff to return to review the results thereof.  AR 929.)  On July 17, 2019, a 24-hour ECG was performed, and seven episodes of palpitations and shortness of breath were recorded. (AR 923.) Plaintiff stayed in normal sinus rhythm with an average heart rate of 83 beats per minute, which varied between 65 to 116 beats per minute.  (AR 923.)  There were several episodes of sinus tachycardia with symptomatic correlation. (AR 923.) There were also frequent PVCs noted, never in bigeminy or trigeminal pattern, and there was symptomatic correlation. (AR 923.)

On July 16, 2020, Plaintiff presented to Dr. Ashraf for follow-up of his chest discomfort. (AR 919.) Dr. Ashraf diagnosed Plaintiff with angina pectoris, presence of coronary angioplasty implant and graft, essential hypertension, and mixed hyperlipidemia. (AR 920.) Dr. Ashraf prescribed metoprolol tartrate and advised Plaintiff to return for follow-up. (AR 920.)

On August 11, 2020, Plaintiff presented to Dr. Ashraf for follow-up of his chest discomfort stating he was not feeling well. (AR 915.) Dr. Ashraf diagnosed Plaintiff with precordial pain, back pain, and knee pain. (AR 916.)  Dr. Ashraf continued his medication and requested a myocardial perfusion imaging study since Plaintiff was unable to walk on a treadmill. (AR 916.)

1.      Medical Opinion Evidence

On June 25, 2019, Roger Wagner, M.D., conducted a consultative comprehensive internal medicine evaluation of Plaintiff.  (AR 786.)  Dr. Wagner reviewed 14 pages of medical records and physically examined Plaintiff. (AR 786-91.)  Dr. Wagner diagnosed Plaintiff with diabetes, coronary artery disease, knee pain, and bilateral carpal tunnel syndrome.  (AR 790.)  Dr. Wagner opined the

following limitations: maximum standing and walking capacity limited to four hours; no sitting limitations; maximum lifting and carrying capacity of 20 pounds occasionally and 10 pounds frequently; climbing occasionally and crouching frequently; and handling frequently.  (AR 791.)

On July 19, 2019, state agency medical consultant G. Dale, M.D., reviewed Plaintiff's medical history at the initial consideration level.  (AR 227-231.)  Dr. Dale determined that Plaintiff had severe impairment of ischemic heart disease, and non-severe impairments of essential hypertension and diabetes mellitus. (AR 228.)  Dr. Dale opined that Plaintiff could occasionally lift and/or carry up to 20 pounds, frequently lift and/or carry up to 10 pounds, stand, sit and/or walk about 6 hours in an 8-hour workday, and had no restrictions on pushing and pulling.  (AR 230.)  He further opined that Plaintiff could: frequently climb ramps or stairs; occasionally climb ladders, ropes or scaffolds; and frequently balance, stoop, kneel, crouch and crawl. (AR 230.)  Dr. Dale also opined that Plaintiff had no limitations in reaching or feeling, had no visual, communicative, or environmental limitations, but was limited in handling and fingering with both hands. (AR 231.)  Dr. Dale limited Plaintiff to light work in light of his history of coronary artery disease. (AR 227-28.)

On November 14, 2019, state agency medical consultant A. Khong, M.D., reviewed the medical records at the reconsideration level. (AR 243-48.)  Dr. Khong determined that Plaintiff had severe impairment of ischemic heart disease with or without angina, and non-severe impairments of essential hypertension, diabetes mellitus, and carpal tunnel syndrome. (AR 244.)  Dr. Khong opined that Plaintiff could occasionally lift and/or carry up to 20 pounds, frequently lift and/or carry up to 10 pounds, stand, sit and/or walk about 6 hours in an 8-hour workday, and had no restrictions on pushing and pulling.  (AR 245.)  Dr. Khong opined that Plaintiff had no postural, manipulative, visual, communicative, or environmental limitations. (AR 246.)  Dr. Khong concluded that Plaintiff was not disabled and could perform light work. (AR 247.)

B.     Administrative Proceedings

The Commissioner initially denied Plaintiff's application for DIB on July 26, 2019. (AR 235.) Plaintiff's application was denied again on reconsideration on November 14, 2019. (AR 249.) Consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  At a hearing held on November 23, 2020, Plaintiff appeared with counsel and testified before an ALJ as to

4

his alleged disabling conditions. (AR 33-79.)  On December 9, 2020, the ALJ determined that Plaintiff was not disabled.  (AR 26.)

      C.     The ALJ's Decision

      In his decision dated December 9, 2020, the ALJ found that Plaintiff was not disabled, as defined by the Act, from December 1, 2018, to the date of the hearing, because Plaintiff could perform his past work as well as other work. (AR 26.)  The ALJ conducted the five-step disability analysis set forth in 20 C.F.R. § 416.920. (AR 18-26.)  The ALJ determined that Plaintiff had not engaged in substantial gainful activity since December 1, 2018, the alleged onset date (step one). (AR 18.)  At step two, the ALJ found Plaintiff's following impairments to be severe: "history of myocardial infarction; coronary artery disease; hypertension; diabetes mellitus; degenerative joint disease of the bilateral wrists/bilateral Tinel's; pain and reduced range of motion in the left shoulder; left foot tendonitis; and recurrent umbilical hernia."  (AR 18.)  Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings") (step three). (AR 19.)

      The ALJ then assessed Plaintiff's RFC and applied the RFC assessment at steps four and five. See 20 C.F.R. § 416.920(a)(4) ("Before we go from step three to step four, we assess your residual functional capacity. . . . We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps."). The ALJ determined that Plaintiff had the RFC:

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except stairs and ramps occasionally. No ropes, ladders and scaffolds. Balancing, and stooping frequently. Kneeling, crouching, and crawling occasionally. Occasional operation of foot controls with the left lower extremity. Occasional reaching with the left dominant upper extremity. Frequent handling and fingering bilaterally.

(AR 20.)  The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (AR 21.)

      At step 4, the ALJ determined that Plaintiff was capable of performing his past relevant work as a Contractor. (AR 24.)  The ALJ further determined that in addition to past relevant work, Plaintiff would be able to perform the requirements of representative occupations such as Furniture Retail

1  Consultant (DOT 295.357-018), Photocopying Machine Operator (DOT 207.685-014), and Office

2  Helper (DOT 239.567-010).  Ultimately, the ALJ concluded that Plaintiff was not disabled because

3  Plaintiff could perform his past relevant work and was capable of making a successful adjustment to

4  other work that existed in significant numbers in the national economy" (step 5). (AR 25-26.)

5         Plaintiff subsequently sought review of the ALJ's decision before the Appeals Council, which

6  denied review on June 2, 2021. (AR 1-9.) Therefore, the ALJ's decision became the final decision of

7  the Commissioner. 20 C.F.R. § 416.1481.

8  **III.    LEGAL STANDARD**

9         A.    Applicable Law

10        An individual is considered "disabled" for purposes of disability benefits if he or she is unable

11  "to engage in any substantial gainful activity by reason of any medically determinable physical or

12  mental impairment which can be expected to result in death or which has lasted or can be expected to

13  last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). However, "[a]n

14  individual shall be determined to be under a disability only if h[er] physical or mental impairment or

15  impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot,

16  considering h[er] age, education, and work experience, engage in any other kind of substantial gainful

17  work which exists in the national economy." Id. at § 1382c(a)(3)(B).

18        "The Social Security Regulations set out a five-step sequential process for determining whether

19  a claimant is disabled within the meaning of the Social Security Act." Tackett v. Apfel, 180 F.3d 1094,

20  1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520); see also 20 C.F.R. § 416.920. The Ninth Circuit

21  has provided the following description of the sequential evaluation analysis:

22        In step one, the ALJ determines whether a claimant is currently engaged in substantial
          gainful activity. If so, the claimant is not disabled. If not, the ALJ proceeds to step two
23        and evaluates whether the claimant has a medically severe impairment or combination of
          impairments. If not, the claimant is not disabled. If so, the ALJ proceeds to step three and
24        considers whether the impairment or combination of impairments meets or equals a listed
          impairment under 20 C.F.R. pt. 404, subpt. P, [a]pp. 1. If so, the claimant is automatically
25        presumed disabled. If not, the ALJ proceeds to step four and assesses whether the
          claimant is capable of performing her past relevant work. If so, the claimant is not
26        disabled. If not, the ALJ proceeds to step five and examines whether the claimant has the
          [RFC]...to perform any other substantial gainful activity in the national economy. If so,
27        the claimant is not disabled. If not, the claimant is disabled.

28

1    Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005); see also 20 C.F.R. § 416.920(a)(4) (providing

2    the "five-step sequential evaluation process" for SSI claimants). "If a claimant is found to be

3    'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps."

4    Tackett, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520); 20 C.F.R. § 416.920.

5         "The claimant carries the initial burden of proving a disability in steps one through four of the

6    analysis." Burch, 400 F.3d at 679 (citing Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)).

7    "However, if a claimant establishes an inability to continue her past work, the burden shifts to the

8    Commissioner in step five to show that the claimant can perform other substantial gainful work." Id.

9    (citing Swenson, 876 F.2d at 687).

10        B.    Scope of Review

11        "This court may set aside the Commissioner's denial of [social security] benefits [only] when

12   the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as

13   a whole." Tackett, 180 F.3d at 1097 (citation omitted). "Substantial evidence" means "such relevant

14   evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v.

15   Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. of N.Y. v. NLRB, 305 U.S. 197, 229

16   (1938)). "Substantial evidence is more than a mere scintilla but less than a preponderance." Ryan v.

17   Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008).

18        "This is a highly deferential standard of review . . . ." Valentine v. Comm'r of Soc. Sec.

19   Admin., 574 F.3d 685, 690 (9th Cir. 2009). The ALJ's decision denying benefits "will be disturbed

20   only if that decision is not supported by substantial evidence or it is based upon legal error." Tidwell v.

21   Apfel, 161 F.3d 599, 601 (9th Cir. 1999).  Additionally, "[t]he court will uphold the ALJ's conclusion

22   when the evidence is susceptible to more than one rational interpretation." Id.; see, e.g., Edlund v.

23   Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) ("If the evidence is susceptible to more than one

24   rational interpretation, the court may not substitute its judgment for that of the Commissioner."

25   (citations omitted)).

26        In reviewing the Commissioner's decision, the Court may not substitute its judgment for that of

27   the Commissioner.  Macri v. Chater, 93 F.3d 540, 543 (9th Cir. 1996).  Instead, the Court must

28   determine whether the Commissioner applied the proper legal standards and whether substantial

evidence exists in the record to support the Commissioner's findings.  See Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007).  Nonetheless, "the Commissioner's decision 'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'"  Tackett, 180 F.3d at 1098 (quoting Sousa v. Callahan, 143 F.3d 1240, 1243 (9th Cir. 1998)).  "Rather, a court must 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'"  Id. (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)).

Finally, courts "may not reverse an ALJ's decision on account of an error that is harmless." Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1055–56 (9th Cir. 2006)).  Harmless error "exists when it is clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'"  Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008) (quoting Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006)).  "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination."  Shinseki v. Sanders, 556 U.S. 396, 409 (2009) (citations omitted).

## IV.   DISCUSSION

### A.   ALJ's RFC Finding

Plaintiff claims that the ALJ's RFC finding was not supported by substantial evidence because the ALJ failed to properly evaluate the opinion of treating physician, Dr. Ashraf.  He claims the ALJ improperly rejected Dr. Ashraf's medical opinion by failing to provide specific and legitimate reasons. Defendant contends that the ALJ properly evaluated the opinion of Dr. Ashraf, and substantial evidence supported the ALJ's RFC assessment. As discussed below, the Court agrees with Plaintiff that the ALJ failed to properly evaluate Dr. Ashraf's medical opinion.

#### 1.   Legal Standard

Plaintiff's claim is governed by the agency's "new" regulations concerning how ALJs must evaluate medical opinions for claims filed on or after March 27, 2017.  20 C.F.R. § 404.1520c.  The regulations set "supportability" and "consistency" as "the most important factors" when determining the opinions' persuasiveness.  20 C.F.R. § 404.1520c(b)(2).  And although the regulations eliminate the "physician hierarchy," deference to specific medical opinions, and assigning "weight" to a medical

opinion, the ALJ must still "articulate how [they] considered the medical opinions" and "how

persuasive [they] find all of the medical opinions."  20 C.F.R. § 404.1520c(a)–(b).

Recently, the Ninth Circuit has issued the following guidance regarding treatment of

physicians' opinions after implementation of the revised regulations:

> The revised social security regulations are clearly irreconcilable with our caselaw
> according special deference to the opinions of treating and examining physicians on
> account of their relationship with the claimant.  *See* 20 C.F.R. § 404.1520c(a) ("We
> will not defer or give any specific evidentiary weight, including controlling weight, to
> any medical opinion(s) . . . , including those from your medical sources.").  Our
> requirement that ALJs provide "specific and legitimate reasons" for rejecting a treating
> or examining doctor's opinion, which stems from the special weight given to such
> opinions, *see Murray*, 722 F.2d at 501–02, is likewise incompatible with the revised
> regulations.  Insisting that ALJs provide a more robust explanation when discrediting
> evidence from certain sources necessarily favors the evidence from those sources—
> contrary to the revised regulations.

Woods v. Kijakazi, 32 F.4th 785, 792 (9th Cir. 2022).  Accordingly, under the new regulations, "the

decision to discredit any medical opinion, must simply be supported by substantial evidence."  Id. at

787.

In conjunction with this requirement, "[t]he agency must 'articulate . . . how persuasive' it

finds 'all of the medical opinions' from each doctor or other source, 20 C.F.R. § 404.1520c(b), and

'explain how [it] considered the supportability and consistency factors' in reaching these findings, id.

§ 404.1520c(b)(2)."  Woods, 32 F.4th at 792.  "Supportability means the extent to which a medical

source supports the medical opinion by explaining the 'relevant . . . objective medical evidence.'"  Id.

at 791–92 (quoting 20 C.F.R. § 404.1520c(c)(1)).  "Consistency means the extent to which a medical

opinion is 'consistent . . . with the evidence from other medical sources and nonmedical sources in the

claim.'"  Id. at 792 (quoting 20 C.F.R. § 404.1520c(c)(2)).

As the Ninth Circuit also observed,

> The revised regulations recognize that a medical source's relationship with the claimant
> is still relevant when assessing the persuasiveness of the source's opinion. *See id.* §
> 404.1520c(c)(3).  Thus, an ALJ can still consider the length and purpose of the
> treatment relationship, the frequency of examinations, the kinds and extent of
> examinations that the medical source has performed or ordered from specialists, and
> whether the medical source has examined the claimant or merely reviewed the
> claimant's records.  *Id.* § 404.1520c(c)(3)(i)–(v).  However, the ALJ no longer needs to
> make specific findings regarding these relationship factors.

Woods, 32 F.4th at 792.  "A discussion of relationship factors may be appropriate when 'two or more medical opinions . . . about the same issue are . . . equally well-supported . . . and consistent with the record . . . but are not exactly the same.'"  Id. (quoting § 404.1520c(b)(3)).  "In that case, the ALJ 'will articulate how [the agency] considered the other most persuasive factors.'"  Id.

With these legal standards in mind, the Court reviews the weight given to Dr. Ashraf's opinion.

### 2.    Analysis

In weighing Dr. Ashraf's opinion, the ALJ reasoned as follows:

> The undersigned has reviewed and considered the opinions of the claimant's doctor Mohammad Ashraf, M.D. (B1F, B4F, B11F, B21F). These opinions are neither consistent with nor supported by the overall record and thus the undersigned does not find them persuasive. Moreover, this checklist-style form appears to have been completed as an accommodation to the claimant and includes only conclusions regarding functional limitations without any rationale for those conclusions. Finally, Dr. Ashraf's evaluations appear to be exaggerated overall and the record indicates that he routinely does activity beyond that described by the doctor.

(AR 24.)

As correctly noted by Plaintiff, the ALJ rejected Dr. Ashraf's opinion as "neither consistent with nor supported by the overall record," without supporting this conclusion with any evidence whatsoever.  The ALJ offered no explanation as to why Dr. Ashraf's opinion was not supported by, or consistent with, the medical record.  Dr. Ashraf was Plaintiff's treating physician over several years. As previously set forth, Dr. Ashraf treated Plaintiff for coronary artery disease with numerous procedures and medications.  Physical examinations and medical testing revealed a continuous and extensive history of heart disease with chest pain associated with activity, exercise intolerance, and feeling of unwellness.  There is no apparent inconsistency in his opinion and the medical record, nor does the ALJ point to any evidence of inconsistency.  The ALJ mentions that Plaintiff routinely does activity beyond that prescribed by the doctor, but he does not specify those activities and how they are in excess of Dr. Ashraf's opined limitations.  The ALJ's determination to give little weight to Dr. Ashraf's opinion is not supported by substantial evidence.

Plaintiff also correctly points out that the ALJ improperly relied on the opinion of Dr. Wagner to discredit Dr. Ashraf.  The ALJ noted that Dr. Wagner reviewed Plaintiff's cardiac history and examined Plaintiff. (AR 22.) According to the ALJ, Dr. Wagner's examination "revealed a regular

heart rate and rhythm; normal S1 and S2 and no murmurs." (AR 22.) The ALJ then concluded that "[t]hese findings are consistent with the remaining record." (AR 22.)  However, as Plaintiff points out, the conclusion was unsupported and inconsistent with the medical record, including: the results of a 24-hour echocardiogram which revealed seven episodes of palpitations and shortness of breath; several episodes of sinus tachycardia with symptomatic correlation; and frequent PVC's.  (AR 923.) The record also indicated that Dr. Ashraf had requested a myocardial perfusion imaging study because Plaintiff was unable to walk on a treadmill. (AR 916.)  The ALJ failed to account for any of this probative evidence in his determination.

As pointed out by Plaintiff, the ALJ focused on certain benign findings, but ignored evidence that detracted from Dr. Ashraf's opinion.  "[T]he Commissioner's decision 'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'"  Tackett, 180 F.3d at 1098 (quoting Sousa v. Callahan, 143 F.3d 1240, 1243 (9th Cir. 1998)).  "Rather, a court must 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'"  Id. (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)).

In crediting Dr. Wagner's opinion over Dr. Ashraf's, the ALJ also failed to articulate whether and how he took into account any of the other factors, such as, the length and purpose of the treatment relationship, the frequency of examinations, the kinds and extent of examinations that the medical source has performed or ordered from specialists, and whether the medical source has examined the claimant or merely reviewed the claimant's records.  20 C.F.R. § 404.1520c(c)(3)(i)–(v).  Given that Dr. Ashraf was Plaintiff's treating physician over several years, and Dr. Wagner only reviewed Plaintiff's medical records and examined him once, these factors would certainly weigh in favor of crediting Dr. Ashraf's opinion over Dr. Wagner's.  See Woods, 32 F.4th at 792 (quoting § 404.1520c(b)(3)) ("A discussion of relationship factors may be appropriate when 'two or more medical opinions . . . about the same issue are . . . equally well-supported . . . and consistent with the record . . . but are not exactly the same.' In that case, the ALJ 'will articulate how [the agency] considered the other most persuasive factors.'"). The ALJ's failure to articulate whether and how he considered these other factors was error.

### 3.     Error Not Harmless

Plaintiff also has the burden of establishing that any error resulted in actual harm.  See Ludwig v. Astrue, 681 F.3d 1047, 1054–55 (9th Cir. 2012).  An "ALJ's error is harmless where it is inconsequential to the ultimate nondisability determination."  See Molina, 674 F.3d at 1115 (quotation marks and citations omitted)); Garcia v. Comm of Soc. Sec., 768 F.3d 925, 932 & n.10 (9th Cir. 2014) (harmless error analysis applies where ALJ errs by not discharging duty to develop record).

In this case, the ALJ's error was prejudicial.  In failing to properly evaluate the opinion of Dr Ashraf, the ALJ discarded evidence that could materially affect the ALJ's disability determination. Dr. Ashraf limited Plaintiff to sitting for 30 minutes at a time, standing 10 minutes at one time, sitting for 2 hours in an 8-hour workday, and standing and/or walking less than 2 hours in an 8-hour workday. (AR 800-01; 940-41.)  The vocational expert testified that all full-time work would be precluded if the hypothetical individual could only stand or walk less than two hours out of an eight-hour workday and only 10 minutes at a time.  (AR 78.)  Thus, the error warrants remand.

### 4.     The ALJ's Error Warrants Remand for Further Proceedings

Where the ALJ commits an error and that error is not harmless, the "ordinary . . . rule" is "to remand to the agency for additional investigation or explanation."  Treichler, 775 F.3d at 1099 (citations omitted).  The Ninth Circuit recognized a limited exception to this typical course where courts "remand[] for an award of benefits instead of further proceedings."  Id. at 1100–01 (citations omitted); see also id. at 1100 (noting that this exception is "sometimes referred to as the 'credit-as-true' rule").  In determining whether to apply this exception to the "ordinary remand rule," the court must determine, in part, whether (1) "the record has been fully developed;" (2) "there are outstanding issues that must be resolved before a determination of disability can be made;" and (3) "further administrative proceedings would be useful."  Id. at 1101 (citations omitted).  As to the last inquiry, additional "[a]dministrative proceedings are generally useful where the record has not been fully developed, there is a need to resolve conflicts and ambiguities, or the presentation of further evidence . . . may well prove enlightening in light of the passage of time."  Id. (citations omitted).  Ultimately, "[t]he decision whether to remand a case for additional evidence or simply to award benefits is in [the court's] discretion."  Swenson, 876 F.2d at 689 (citation omitted).

1        The Court finds that the "credit-as-true" exception to the "ordinary remand rule" is

2   inapplicable in this case because additional administrative proceedings would be useful.  There may be

3   specific, clear and convincing reasons the ALJ can offer for discounting Dr. Ashraf's opinion that

4   were not stated.  The ALJ may also elect to further develop the record, if deemed necessary.  Further

5   proceedings would therefore be useful to allow the ALJ to resolve this "outstanding issue[ ]" before a

6   proper disability determination can be made.  See Varney v. Sec'y of Health & Human Servs., 859

7   F.2d 1396, 1401 (9th Cir. 1988).  Indeed, Plaintiff requests remand for further proceedings in the event

8   the Court finds harmful error.  (Doc. 14 at 13.)

9        On remand, the ALJ should reevaluate Dr. Ashraf's opinion and address any necessary

10   changes to the RFC determination.  If the ALJ again discounts Dr. Ashraf's opinion, he can then

11   provide an adequate discussion and explanation of the specific reasons for discounting the evidence.

12   See Payan v. Colvin, 672 F. App'x 732, 733 (9th Cir. 2016).  The ALJ will also need to reevaluate his

13   conclusions at Steps Four and Five of the disability determination in light of any changes to Plaintiff's

14   RFC.

15   **V.    CONCLUSION AND ORDER**

16        Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial

17   evidence and is, therefore, VACATED and the case REMANDED to the ALJ for further proceedings

18   consistent with this Order.  On remand, the ALJ should reevaluate RFC, the medical record,

19   testimony, and any step of the five-step sequential analysis from step two onward; afford a new

20   hearing; and permit, if needed, any supplemental evaluations of Plaintiff's physical RFC.

21   The Clerk of this Court is DIRECTED to enter judgment in favor of Plaintiff Jeffrey Scott Smith and

22   against Defendant Kilolo Kijakazi, Acting Commissioner of Social Security.

23

24   IT IS SO ORDERED.

25   Dated:   **September 6, 2022**                         _/s/ Sheila K. Oberto_

26                                  UNITED STATES MAGISTRATE JUDGE

27

28